### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| Ryan M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 24 cv 50307 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Ryan M., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A. Procedural History

On February 2, 2022, Ryan M. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on January 1, 2019. R. 19. The Social Security Administration denied his application initially on July 12, 2022, and upon reconsideration on October 19, 2022. *Id*. Plaintiff filed a written request for a hearing and on May 22, 2023, a telephonic hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Plaintiff appeared and testified. *Id*. Plaintiff was not represented by counsel. *Id.* Michael A. Lace, Psy.D., an impartial medical expert, and Katherina Jaroszenko, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On October 26, 2023, the ALJ issued his written opinion denying Plaintiff's claim. R. 19-32. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [15], the Commissioner's response brief [20], and Plaintiff's reply [22].

## B.  The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date. R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: autism spectrum disorder; borderline intellectual functioning; learning disorder; major depressive disorder; and attention deficit hyperactivity disorder ("ADHD"). *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 23-26.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels except due to moderate limitations in concentration, persistence or pace, Plaintiff is restricted to understanding, remembering and carrying out simple instructions for simple, routine and repetitive tasks; no hourly production requirements but could meet end of day goals; able to make simple work-related decisions; is able to frequently interact with supervisors, occasionally interact with coworkers and the public; and able to be exposed to no more than occasional changes in job setting. R. 26-30. At step four, the ALJ found that Plaintiff had no past relevant work. R. 30. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 30-31. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since January 1, 2019. R. 31-32.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

2

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) inadequately considering the medical opinions, (2) failing to account for the findings of Dr. Stone, (3) improperly evaluating Plaintiff's symptoms, and (4) not supporting the residual functional capacity ("RFC") with substantial evidence. The Court finds that the ALJ adequately evaluated the medical opinions and Plaintiff's symptoms. The ALJ also supported his conclusions with substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

### Medical Opinions

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how they considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20CV02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (internal quotation marks and citation omitted).

Dr. Donna Hudspeth, Psy.D. completed a Disability Determination Explanation on January 19, 2018, a year before Plaintiff's alleged onset date. As the ALJ noted, Dr. Hudspeth assessed moderate limitations in four areas of mental functioning and opined that Plaintiff "would require special considerations, monitoring and accommodations that might be found i[n] a modified or sheltered work setting and that he would have difficulty making ordinary work decisions." R. 29, 97. The ALJ found Dr. Hudspeth's opinion "of little probative value as to the claimant's functioning as of the alleged onset date." R. 29. Dr. Michael Lace, Psy.D., testified at the hearing.

3

R. 19. The ALJ noted that Dr. Lace was "the only psychological medical professional who was able to review the most complete medical record" and that "[e]ven the most up-to-date evidence which Dr. Lace had no opportunity to consider… fails to support greater limitations than assessed by psychological medical expert Dr. Lace at the hearing." R. 29. The ALJ found Dr. Lace's opinion persuasive because it was "well-supported by and consistent with the objective medical evidence contained in the record." *Id*. Plaintiff contends that the ALJ did not properly assess the medical opinions' supportability and consistency as required by 20 C.F.R. § 404.1520c.

The Court finds that the ALJ adequately articulated his assessments of the medical opinions. When considering the opinion of Dr. Hudspeth, although the ALJ did not explicitly mention "supportability," the ALJ noted that Dr. Hudspeth did not have the opportunity to review the hearing level evidence, including all the medical evidence since the alleged onset date. R. 29. The ALJ noted that the opinion was dated almost a year before Plaintiff's alleged onset date and therefore had "little probative value as to the claimant's function as of the alleged onset date." *Id*. As for consistency, the ALJ noted that Dr. Hudspeth's opinion was inconsistent with the opinion of Dr. Lace. *Id*. Although Plaintiff points to evidence that supported Dr. Hudspeth's opinion and was consistent with it, the ALJ was not required to "specifically address every piece of evidence." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Similarly, the ALJ articulated that out of all the medical sources, Dr. Lace was able to review the most complete medical record, noting that "[t]he scope of evidence Dr. Lace had to review is an important factor as it allows for a longitudinal view of claimant's conditions from different sources." R. 29. The ALJ also mentioned that Dr. Lace's opinion was consistent with the most up-to-date evidence, including the consultative examinations conducted by Dr. Michael Stone, Psy.D., and Dr. Catherine Dean, Psy.D., as well as the neuropsychological evaluation conducted by Dr. Brandi Boan, Psy.D. *Id*. After considering this evidence, the ALJ concluded that Dr. Lace's opinion was well-supported and consistent with the objective medical evidence. *Id*. The ALJ adequately articulated his assessments of the medical opinions. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized the social-security adjudicators are subject to only the most minimal of articulation requirements.").

Plaintiff also contends that the ALJ erred by finding that Dr. Boan's neuropsychological evaluation did not constitute a medical opinion. Pursuant to the Social Security regulations, a medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in certain abilities. 20 C.F.R. § 404.1513(a). In contrast, other medical evidence is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. The Seventh Circuit has held that a medical opinion is not limited "only to statements about whether a claimant can perform specific workplace demands," but "sweeps more broadly . . . to include statements about what the claimant 'can still do.'" *Jones v. Dudek*, 134 F.4th 991, 997 (7th Cir. 2025) (quoting 20 C.F.R. § 404.1513(a)) (finding a doctor's statement that a claimant could work no more than 20 hours per week constituted a medical opinion). If a medical source's statements do not constitute a medical opinion, "an ALJ has no duty to specifically examine or evaluate [them] under the regulatory factors." *Miller v. Kijakazi*, No. 21CV094, 2022 WL 4592016, at *5 (N.D.

4

Ind. Sept. 29, 2022); *see also Everson v. Kijakazi*, No. 21CV716, 2022 WL 3656462, at *7 (E.D. Wisc. Aug. 25, 2022).

The ALJ found that Dr. Boan's neuropsychological evaluation provided "no clear opinion as to any specific work-related mental limitations" and excluded it from opinion evaluation. R. 30. As recently clarified by the Seventh Circuit, medical opinions do not need to "address *both* what a claimant 'can still do' *and* whether the claimant has specific 'impairment-related' limitations." *Jones*, 134 F.4th at 996. Even if the ALJ was correct that Dr. Boan's evaluation did not opine on Plaintiff's specific work-related mental limitations, the ALJ erred by failing to consider whether the evaluation addressed what Plaintiff could still do. Nevertheless, any error was harmless because the ALJ stated that even though he did not assess the evaluation as a medical opinion, the RFC "accommodate[d] for [Plaintiff's] cognitive deficiencies." R. 30. The ALJ also stated that Dr. Boan's evaluation "fail[ed] to support greater limitations than assessed by psychological medical expert Dr. Lace at the hearing." R. 29. Based on these findings, the Court has great confidence that the result would not change on remand even if the ALJ considered Dr. Boan's evaluation a medical opinion. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022).

Plaintiff next contends that the ALJ failed to properly account for the opinion of Dr. Michael Stone by finding his opinion to be persuasive yet failing to acknowledge that Plaintiff would have a moderate limitation in ability to carry out simple instructions or make judgments on simple work-related decisions and not allowing for these limitations in the RFC. However, the Court finds that the ALJ's RFC finding adequately accounted for Dr. Stone's finding of "moderate limitations" in these areas.

In July 2023, Dr. Stone concluded that Plaintiff's "ability to understand, remember, and carry out instructions [was] affected by the impairment." R. 1178. Specifically, Dr. Stone found that Plaintiff had a "mild" limitation in the ability to "understand and remember simple instructions." Dr. Stone also assessed that Plaintiff had "moderate" limitations in the ability to "[c]arry out simple instructions…make judgements on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; [and]…make judgements on complex work related decisions." R. 1178. The ALJ noted Dr. Stone's findings, and found his opinion "persuasive, because it is consistent with and supported by mental status examination findings and objective testing." R. 29. However, the ALJ also found "hearing level evidence consistent with moderate limitation in interacting with others rather than no limitation." R. 29. Plaintiff argues that the ALJ's decision to find Dr. Stone's opinion persuasive is inconsistent with the ALJ's RFC determination, which stated the Plaintiff could understand, remember, and carry out simple instructions for simple, routine, and repetitive tasks; make simple work-related decisions; and had no hourly production requirements but could meet end-of-day goals. R. 26.

When formulating an RFC for a claimant, an ALJ must account for all moderate limitations identified in the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). However, as the Seventh Circuit has noted, "A 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). Further, "'fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with

the ability to perform simple, repetitive tasks at a consistent pace." *Id*. In this case, Dr. Stone indicated "moderate" limitations in the ability to "carry out simple instructions" and "the ability to make judgements on simple work-related decisions." Like *Pavlicek*, an individual with a "fair" ability to perform simple instructions can perform simple instructions and restricting them to simple tasks is an accommodation of that fair ability. The ALJ's formulation of the RFC's specific limitations addressed Dr. Stone's findings and satisfied the minimal articulation requirements for evaluating medical opinions.

### **Subjective Symptoms**

Plaintiff next asserts that the ALJ committed legal error by failing to properly evaluate Plaintiff's subjective symptoms and failing to fully account for these symptoms in the RFC. Plaintiff specifically criticizes the ALJ's reliance on inconsistent medication use without exploring the reasons for non-compliance, as well as Plaintiffs minimal awareness of his own functioning.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment… that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. The Court will uphold an ALJ's symptom analysis unless that determination is "patently wrong." *Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, at *4 (N.D. Ill. Sept. 30, 2024) (quoting *Wilder v. Kijakazi*, 22 F.4th 644, 65). Here, the ALJ's evaluation of Plaintiff's subjective symptoms was adequately supported by evidence and explanation.

Plaintiff contends that the ALJ impermissibly relied on inconsistent medication usage to discount his symptoms. Under SSR 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of inconsistencies of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." The ALJ did note Plaintiff's inconsistent medication usage, stating "absent is any consistent use of medication…he reported that he discontinued the prescribed medication more than a month ago." R. 28. However, the ALJ did not specifically use this as a reason to discount Plaintiff's subjective symptoms but instead focused on Plaintiff's ability to "adequately relate" and be socially appropriate. *Id*. The ALJ also pointed out that Plaintiff had "minimal difficulties in managing his emotions during medically related encounters and in the context of inconsistent use, to no use, of medications." R. 25. Thus, the ALJ did not hold the inconsistent use of medication against Plaintiff but rather considered Plaintiff's stable mental health even when off of medications.

Plaintiff also argues that the ALJ did not acknowledge that Plaintiff did not understand his own mental limitations. However, the ALJ acknowledged the issue, stating "[t]he claimant testified to feeling that he does not have any problems, and lack of knowledge as to how Asperger's affects him." R. 27. The ALJ analyzed this issue along with the rest of Plaintiff's testimony, including his statements about his physical and mental symptoms. The ALJ sufficiently followed the guidance provided in SSR 16-3p by citing specific observations from objective medical evidence, considering the plaintiff's statements and his daily activities, and accounting for his work history, which meets

the low articulation threshold as to this issue.

The Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. The Court notes that the ALJ's record review is detailed and comprehensive. The ALJ also set out Plaintiff's subjective statements in detail. The ALJ appropriately considered the consistency of Plaintiff's own statements. The ALJ first noted Plaintiff's subjective symptoms, including his "reported difficulty remembering what he has been 'told to do and sometimes how to do it'; reported difficulty with numbers and math, difficulty calming down when upset, and 'social anxiety in groups of people' and loud environments; [difficulty] understanding, following instructions, and getting along with others…difficulty following writing instructions, and problems with changes in routine and anxiety with handling stress." R. 27. The ALJ contrasted these statements with the medical records and opinions, activities of daily living, and the ALJ's own findings based on the hearing testimony. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent because they were not as limiting as alleged. R. 28. the Court finds that the ALJ's subjective evaluation fully explained and supported and not patently wrong. *Senora W*, 2024 WL 4346613, at *4.

### RFC Assessment

Finally, Plaintiff argues that the RFC assessment was not supported by substantial evidence. Specifically, Plaintiff asserts the ALJ failed to acknowledge his struggles with absenteeism and failed to explain why the RFC limited interaction with coworkers and the public to "occasional," but allowed "frequent" interaction with supervisors.

At the hearing, the ALJ asked the vocational expert ("VE"): "if the individual was absent on average two days a month, would that preclude all jobs?" To which, the VE answered "yes". R. 73. The ALJ did not include this in Plaintiff's RFC. Typically, "failure to consider the VE's testimony about tolerated absences would be error potentially requiring remand." *Bernard L. v. King*, No. 22 CV 00120, 2025 WL 296054, at *6 (N.D. Ill. Jan. 24, 2025). However, failure to consider the VE's testimony is not error when the ALJ does not find Plaintiff's absenteeism to be a limiting effect of his impairments. *see Gribben v. Kijakazi*, No. 21-1987, 2022 WL 59404, at *2 (7th Cir. Jan. 6, 2022) (finding the ALJ did not ignore an opinion of the VE when the ALJ found claimant did not require the particular restriction and the VE's statement was thus not relevant). While the ALJ did not explicitly say that the Plaintiff did not require this particular restriction, the ALJ noted Plaintiff's "moderate limitation" with "regard to concentrating, persisting or maintaining pace," which, as discussed above, means that functioning is "fair." *Pavlicek*, 994 F.3d at 783. Further, the ALJ did not find the Plaintiff's reported difficulties in this area persuasive, noting "[a]side from some absences, his employer reported no accommodations at work and the claimant was able to complete his work in the same amount of time as employees in similar positions." R. 24.[1] Thus, the VE's statement about Plaintiff's absenteeism was not relevant.

---

[1] The Court recognizes that this analysis is found in step 2 of the ALJ's decision. However, it is proper to read the ALJ's decision as a whole, *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), and as the Seventh Circuit has held, it is a "needless formality" to require the ALJ to provide repetitious content in his decision. *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020).

In regard to the RFC's inclusion of social interaction limitations, the ALJ justified the distinction between "frequent" interaction with supervisors and "occasional" interaction with coworkers and the public by pointing to Plaintiff's own reports of getting along well with supervisors and authority figures, but only "certain" coworkers. The ALJ wrote, "the claimant testified to difficulty getting along with certain workers but indicated no problem with supervisors." R. 24. The ALJ also noted in his previous work experience, that the Plaintiff, "despite some problems with mood and 'social anxieties,' he maintained ability to interact frequently with supervisors, and occasionally with coworkers and the public." R. 28. These statements meet the minimal articulation standard necessary and explain why this specific limitation was included in the RFC.

The Court finds that the ALJ adequately evaluated the medical opinions, Plaintiff's symptoms, and supported his conclusions with substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [15] is denied and the Commissioner's motion for summary judgment [20] is granted.

Date: September 3, 2025                    ENTER:

_Margaret J. Schneider_
United States Magistrate Judge